UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APR 15 2026 AM 11:23
FILED - USDC - FLMD - TPA

JEREMIAH VERNON WEBB,

    Plaintiff,

v.                                            Case No: 8:25-cv-01942-JLB-AAS

MANNY DIAZ, JR., in his individual capacity;

CATHY RUSSELL, in her individual capacity;

STEP UP FOR STUDENTS, INC.;

DOUG TUTHILL, in his individual capacity; and

ANASTASIOS KAMOUTSAS, solely in his official capacity

as current Commissioner of Education for prospective relief,

JOHN and JANE DOE(S),

    Defendants.

---

## VERIFIED FIRST AMENDED COMPLAINT DECLARATORY RELIEF REQUESTED PERMANENT INJUNCTIVE RELIEF REQUESTED DEMAND FOR JURY TRIAL

Plaintiff, Jeremiah Vernon Webb, appearing pro se and individually, files this Verified First Amended Complaint for damages, declaratory relief, and permanent injunctive relief, and alleges:

## I. NATURE OF THE ACTION

1. This is a civil-rights action under 42 U.S.C. § 1983 for damages and prospective relief arising from Defendants' classification of Plaintiff's scholarship-compliance and record-accuracy complaints as a custody dispute, denial of effective access to scholarship information concerning Plaintiff's child, and deliberate nonreview after notice.

2. Plaintiff does not sue on behalf of his minor child.

3. Plaintiff does not seek modification, enforcement, interpretation, or review of any family-court custody or timesharing order. Plaintiff seeks relief only for independent constitutional wrongs and ongoing process-based violations within the state scholarship framework.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States.

5. This Court may award prospective declaratory and permanent injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Ex parte Young, 209 U.S. 123 (1908), against the current Commissioner of Education in his official capacity to end ongoing violations of federal law. Plaintiff does not seek retroactive monetary relief from the State treasury.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to these claims occurred in Sarasota and Manatee Counties, Florida.

## III. NON-DOMESTIC RELATIONS DISCLAIMER

7. This action does not seek to alter, suspend, enforce, or relitigate any domestic-relations order or parenting plan.

## IV. PARTIES

8. Plaintiff Jeremiah Vernon Webb is a resident of Manatee County, Florida.

9. Defendant Manny Diaz, Jr. was at all material times the Commissioner of Education for the State of Florida. Through his office, Plaintiff's complaint was acknowledged and the matter was classified as a custody dispute rather than processed as a scholarship-compliance complaint.

10. Defendant Cathy Russell was at all material times Deputy Executive Director of the Office of Independent Education and Parental Choice and directly responded to Plaintiff's complaint communications.

11. Defendant Step Up for Students, Inc. ("Step Up") is a Florida nonprofit scholarship-funding organization that administered the scholarship at issue under Florida law.

12. Defendant Doug Tuthill was at all material times the President or chief executive officer of Step Up and personally received Plaintiff's direct escalation and later fraud complaint.

13. Defendant Anastasios Kamoutsas is the current Commissioner of Education for the State of Florida and is sued solely in his official capacity for prospective declaratory and permanent injunctive relief. He has present supervisory authority over the Department's complaint-review and classification framework challenged here.

14. John and Jane Doe Defendants are persons whose identities are presently unknown but who participated directly in the challenged conduct, including the Step Up employee or employees who handled Plaintiff's March 31 to April 3, 2025 EMA access request and related account-access decision, and the Department employee or employees who routed, approved, or implemented the March 21 and April 3, 2025 custody-dispute classification of Plaintiff's scholarship-compliance complaints. Plaintiff will seek leave to substitute their true names promptly upon discovery.

## V. GENERAL ALLEGATIONS

15. Plaintiff and the child's mother share 50/50 timesharing under a 2022 parenting plan, and during Plaintiff's timesharing Plaintiff regularly picked up his child from Incarnation Catholic School ("ICS") in Sarasota County, Florida.

16. For at least seven consecutive school years, Plaintiff's child received a Step Up-administered Florida private-school scholarship used for private-school attendance, including the Florida Tax Credit Scholarship Program ("FTC") and/or the Family Empowerment Scholarship for Educational Options ("FES-EO").

17. Beginning in February 2025, Plaintiff submitted written complaints and supporting materials to the Florida Department of Education ("FDOE"), the FDOE Office of Inspector General, and Step Up reporting that ICS was withholding the child during Plaintiff's scheduled pickup times, altering or misreporting attendance, and continuing to receive scholarship funds while the child was not attending school in the ordinary course.

18. Because the child's scholarship was a Step Up-administered private-school scholarship, Plaintiff's complaints directly implicated Step Up's and FDOE's scholarship-account, attendance-linked, and compliance-review functions.

19. Plaintiff specifically reported that the child missed substantial school time in March 2025 and that attendance, lesson-plan, and homework records did not match the child's actual educational participation.

20. On March 21, 2025, Russell acknowledged Plaintiff's complaint, stated that FDOE reviews scholarship-school complaints for legal sufficiency under Rule 6A-6.03315(6), Florida Administrative Code, and advised that the Department would take no further action because it viewed the matter as a custody dispute.

21. Plaintiff promptly replied that the matter was not a custody dispute, but instead involved scholarship-program violations, attendance irregularities, and educational denial. No corrective action followed.

22. On March 31, 2025, and again on April 1 and April 3, 2025, Plaintiff sought EMA account access concerning his child's scholarship information. Step Up stated that it could not merge or relink two accounts and opened a ticket regarding parent EMA account access.

23. Step Up nevertheless left the child's scholarship information accessible only through the other parent's account and denied Plaintiff any separate or otherwise effective access to review what was being disbursed or reported on behalf of his child.

24. On April 3, 2025, the Department, through correspondence issued on behalf of Commissioner Diaz, again responded that it would take no further action because it viewed the matter as a custody dispute.

25. The April 3, 2025 Department response was issued after Plaintiff escalated the matter to the Commissioner's office and left Plaintiff's complaint classified as a custody dispute rather than requiring scholarship-compliance review.

26. On July 29, 2025, Plaintiff submitted a formal written fraud-and-abuse complaint to Step Up's "Concerns Inbox," the channel designated by Step Up for reporting potential program or system fraud or abuse, and copied Tuthill. In that complaint, Plaintiff alleged attendance-record falsification and misuse of scholarship funds in connection with his child's school and demanded investigation, audit, and corrective action.

27. Step Up's auto-response confirmed that the "Concerns Inbox" is used for reporting potential program or system fraud or abuse and stated that Step Up would aim to respond within two business days.

28. Despite direct notice through Plaintiff's complaints, the Department and Step Up did not provide a lawful written merits disposition, effective access to scholarship information, or corrective review of the scholarship-compliance and record-accuracy issues Plaintiff raised.

29. As of the filing of this Complaint, Plaintiff still has not received a lawful written disposition addressing the merits of his scholarship-compliance and record-accuracy complaints and still has not been provided an effective process, to the extent authorized by law, for access to scholarship information concerning his child.

30. Plaintiff alleges that Defendants' complaint-classification, access-control, and nonreview practices burdened Plaintiff's parental-liberty interests and caused emotional distress, loss of parenting time, reputational harm, and out-of-pocket expenses.

## VI. COUNT I – 42 U.S.C. § 1983

## POLICY, CUSTOM, OR, IN THE ALTERNATIVE, FINAL-DECISIONMAKER / RATIFICATION LIABILITY

(Against Step Up for Students, Inc.)

31. Plaintiff realleges paragraphs 11 through 12 and 15 through 30.

32. Plaintiff challenges Step Up only in connection with scholarship-account administration, scholarship-information access, complaint handling through its designated fraud-and-abuse channel, and attendance-linked scholarship treatment within the delegated statutory framework.

33. In the scholarship transactions challenged here, including the child's FTC and/or FES-EO scholarship administration, Step Up exercised delegated authority over scholarship-account administration, eligibility documentation, submission of verified information to the Department, parent-approval procedures for scholarship deposits, violation reporting, and attendance-linked payment processing.

34. Plaintiff's claims against Step Up are limited to those delegated scholarship functions, including access to scholarship-account information, handling of scholarship-compliance complaints, continued scholarship treatment after notice of alleged noncompliance, and attendance-linked verification within the private-school scholarship framework.

35. Because Plaintiff challenges Step Up's conduct in carrying out these statutorily assigned duties, Plaintiff alleges that Step Up acted under color of state law in the specific transactions and decisions challenged in this action.

36. After direct written notice, including Plaintiff's July 29, 2025 formal fraud complaint through Step Up's designated abuse-reporting channel, Step Up maintained scholarship treatment, denied Plaintiff effective access to scholarship information, and did not initiate corrective review, audit, or compliance escalation.

37. Plaintiff alleges that Step Up maintained a policy, custom, or practice of deliberate indifference to credible scholarship-compliance complaints involving attendance irregularities, parent-access issues, and continued scholarship treatment after notice.

38. Plaintiff does not seek to impose respondeat superior liability on Step Up. Plaintiff alleges liability only for Step Up's own policy, custom, or final-decisionmaker/ratification decision described in this Count.

39. In the alternative to a broader policy or custom, Plaintiff alleges that Tuthill personally received Plaintiff's March 16, 2025 escalation and July 29, 2025 fraud complaint and, acting as Step Up's final decisionmaker for parent-access and complaint-handling in this matter, either made the challenged access-denial and nonreview decision himself or reviewed and approved both the decision and its basis before that decision became final.

40. Under either theory - a broader policy or custom, or a single decision attributable to a final decisionmaker - Step Up's official policy was a moving

force behind the continued deprivation of Plaintiff's rights and his resulting damages.

## VII. COUNT II – 42 U.S.C. § 1983

## NARROWED REPLEADING OF PLAINTIFF'S PREVIOUSLY ASSERTED § 1983 INTERFERENCE / UNLAWFUL-SEIZURE CLAIM

## PROCEDURAL DUE PROCESS / ONGOING DENIAL OF FAIR PROCESS WITHIN THE SCHOLARSHIP FRAMEWORK

(Against Diaz, Russell, Tuthill, and John/Jane Doe(s) in their individual capacities, against Step Up for joint state action, and against Kamoutsas solely in his official capacity for prospective declaratory and permanent injunctive relief)

41. Plaintiff realleges paragraphs 2 through 7 and 9 through 30.

42. Plaintiff has a protected liberty interest in the care, custody, companionship, and upbringing of his child.

43. This Count sounds in procedural due process only. Plaintiff does not plead a substantive-due-process challenge to executive conduct and does not claim a constitutional right to compel discretionary enforcement against third parties.

44. This Count narrows and repleads Plaintiff's previously asserted § 1983 claim arising from interference with Plaintiff's parental-liberty interest and the custody-dispute classification of his complaints; it does not add a new cause of action.

45. After actual notice, Defendants used state and delegated-program authority to classify Plaintiff's complaints as categorically nonactionable, deny Plaintiff effective access to scholarship information, and leave in place unreviewed scholarship-treatment and record-handling decisions without fair process. These practices operated on Plaintiff's existing parental-liberty interest rather than on a freestanding right to investigation or enforcement.

46. Russell expressly invoked Rule 6A-6.03315(6), classified Plaintiff's complaint as a custody dispute, and declined further action despite scholarship-compliance and attendance allegations within FDOE's stated review framework.

47. After Plaintiff escalated the matter to the Commissioner's office, Diaz personally approved, directed, or knowingly allowed the April 3, 2025 office response that left Plaintiff's complaint classified as a custody dispute rather than requiring lawful review of the scholarship-compliance and record-accuracy issues Plaintiff presented.

48. Tuthill and Step Up received direct written notice, including a formal fraud complaint submitted through Step Up's designated Concerns Inbox, and did not initiate corrective review, access remediation, or compliance escalation within the delegated scholarship framework.

49. The John and Jane Doe Defendants participated directly in the challenged classification and access decisions identified in paragraph 14.

50. Kamoutsas, as current Commissioner of Education, has present supervisory authority over the Department's complaint-review and classification framework and can provide prospective relief requiring lawful

intake, lawful classification, written dispositions, and preservation of records going forward.

51. Plaintiff pursued the complaint and access channels made available within the scholarship framework, but Defendants provided no notice of any standard by which his scholarship-compliance complaints would be reclassified as a custody dispute, no opportunity to contest that classification before it became final, and no prompt postdeprivation written disposition addressing the merits of his classification, access, and record-accuracy complaints.

52. Plaintiff's injury is ongoing because the challenged framework continues to deny him a lawful written disposition and effective scholarship-information access.

53. The prospective relief sought against Kamoutsas would redress Plaintiff's ongoing injury by requiring lawful intake, lawful classification, written dispositions, preservation of records, and an effective process for scholarship-information access going forward.

54. As a direct and proximate result, Plaintiff suffered the damages alleged in paragraph 30.

## VIII. DECLARATORY AND PERMANENT INJUNCTIVE RELIEF REQUESTED

55. Plaintiff seeks declaratory relief and narrowly tailored permanent injunctive relief only against Defendant Anastasios Kamoutsas in his official capacity to end ongoing violations of federal law.

56. Plaintiff seeks process-based relief limited to lawful intake and classification of scholarship-compliance, attendance, record-accuracy, and parent-access complaints; written dispositions identifying the basis for action or nonaction; preservation of relevant records; and procedures affording Plaintiff effective access, to the extent authorized by law, to scholarship information concerning his child.

57. Plaintiff does not seek an order directing payment, reimbursement, recoupment, suspension, or transfer of scholarship funds, and does not seek any order modifying, enforcing, interpreting, or reviewing a family-court custody or timesharing order.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Enter judgment in his favor on Counts I and II;

B. Award compensatory damages in an amount to be determined at trial;

C. Award punitive damages against those defendants for whom such damages are legally available;

D. Enter declaratory relief that the conduct alleged violated Plaintiff's federal rights;

E. Enter permanent injunctive relief against Defendant Anastasios Kamoutsas in his official capacity;

F. Award costs and any fees authorized by law; and

G. Grant such other and further relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

58. Plaintiff demands trial by jury on all issues triable of right by a jury.

## XI. VERIFICATION

I, Jeremiah Vernon Webb, declare under penalty of perjury under 28 U.S.C. § 1746 that I am the Plaintiff in this action, that I have read the foregoing Verified First Amended Complaint, and that the factual allegations stated in it are true and correct to the best of my knowledge and information and belief this April 15, 2026.

_____
**JEREMIAH VERNON WEBB**
Plaintiff, pro se
11121 Lost Creek Terr 101
Bradenton, FL 34211-
801-755-9600
jeremiah@shoponfire.com